STATE of Missouri, Respondent,

v.

**Michael A. DAVIS, Appellant.**

**Michael A. DAVIS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 44953, WD 47148.**

Missouri Court of Appeals, Western District.

Oct. 12, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 1993.

Application to Transfer Denied Jan. 25, 1994.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., and BERREY and SMART, JJ.

SMART, Judge.

Michael A. Davis appeals from the trial court's judgment finding him guilty of two counts of kidnapping in violation of § 565.-110, RSMo 1986, three counts of forcible rape in violation of § 566.030, RSMo 1986, and two counts of armed criminal action in violation of § 571.015, RSMo 1986. Davis was sentenced as a prior and persistent offender to a total of nine hundred and ninety-nine years imprisonment. Davis also appeals from the motion court's denial of his Rule 29.15 motion for post-conviction relief.

The judgment is affirmed in part, and reversed and remanded for re-sentencing.

On June 26, 1989, Regina Butler[1], fifteen years old, and Melissa Jackson, seventeen years old, celebrated Melissa's birthday at her home, where they spent the night. Early the next morning, the girls walked to a

store to buy some soda. As the girls exited the store they were approached by defendant and a man named Ronald Fox, who asked them if they knew where Montgomery Street was located. Before the girls could answer, defendant put a knife to Regina's throat threatening to hurt her if she resisted. At that same moment, Fox grabbed Melissa and put his arm around her neck threatening to break her neck if she screamed or attempted to run away.

The men forced the girls into a pickup truck and drove them to a field, then forced them to walk into a nearby woods. Fox raped Regina twice and defendant raped Melissa once. Regina and Melissa were told that they would be killed if they told anybody what had happened. The men left the girls in the woods and as they were leaving the girls heard them say that they were going to "hit the road and do it again."

Later on that same day, Fox and Davis drove to Higginsville. At around 10:00 p.m., they waited outside of the high school in the parking lot. They saw a woman walking alone coming out of the high school and walking towards her car. The woman was JoAnn Watkins, a teacher at the school. Defendant approached Ms. Watkins and asked her where Montgomery Street was located or where the Montgomery family lived. Before she could answer, defendant pulled a knife from behind his back and forced her into the passenger side of her car. Fox entered the back seat of the car and defendant drove the vehicle. Over the next seven hours, defendant drove Fox and Ms. Watkins to Kansas City and then to Springfield. During the trip, defendant raped Ms. Watkins twice and sodomized her once. Fox sodomized her twice and raped her twice. Defendant and Fox tried to check into a Holiday Inn with Ms. Watkins, using her credit card. However, while in the hotel, Ms. Watkins got away from defendant, who in turn fled from the premises. The men next went to the parking lot of St. John's Mercy Hospital where they tried to abduct another woman unsuccessfully. Defendant Davis was apprehended and charged with kidnapping, rape, and armed criminal action.

---

1. For purposes of this opinion, the last names of all alleged victims have been changed.

At the trial of the charges related to Regina Butler and Melissa Jackson, Defendant Davis represented himself, having expressed dissatisfaction with his appointed attorney. Defendant also testified at trial. He denied that he had sexual contact with Melissa Jackson. He testified that he feared his associate, Ronald Fox, who insisted that Davis participate in these assaults. Davis testified that he made Melissa remove her clothes so that Fox would think that he was "doing something to her." Defendant did not deny that he had sexual intercourse with JoAnn Watkins. He testified that he did not force her to have sex. He suggested to Ms. Watkins that if she would have sex with him, he would not allow Fox to harm her. Defendant testified that he believed that by having sex with JoAnn Watkins he saved her from the violence of Ronald Fox. At the close of all the evidence, the jury found defendant guilty on all counts. On June 13, 1991, defendant was sentenced as a prior and persistent offender to three hundred years imprisonment on each of the rape convictions, fifteen years imprisonment on each kidnapping conviction and a total of sixty-nine years imprisonment on the two armed criminal action convictions. The sentences were ordered to run consecutively. The trial court denied defendant's Rule 29.15 motion without an evidentiary hearing. Defendant appeals from the conviction and from the denial of his post-conviction motion.

*Sentencing*

Defendant first argues that the trial court erred in accepting the jury's verdicts assessing punishment at terms of 300 years imprisonment on each count of forcible rape because the sentences imposed on those counts exceeded the statutory range of punishment. Defendant suggests that the maximum sentence authorized for the unclassified offense of forcible rape is life imprisonment and the range of punishment for a person convicted of the unclassified offense of forcible rape, and adjudged a persistent offender, is a term of years not less than ten years and not more than thirty years, or life imprisonment.

■ Defendant's argument is based on the fact that forcible rape is an unclassified felo-

ny. The legislature also created a class A felony of forcible rape, which is a forcible rape involving a weapon, serious physical injury, or sexual assault on more than one person. Prior to August 28, 1993, the penalty for the unclassified felony of rape was "life imprisonment or a term of years not less than five years...." Section 566.030.2, RSMo 1992. The penalty for the class A felony of rape is "a term of years not less than ten years and not to exceed thirty years, or life imprisonment." *See* §§ 566.-030.2, 558.011.1(1), RSMo Supp.1992. Defendant argues that because the legislature intended class A forcible rape to be subject to greater punishment than unclassified forcible rape, the term of years "but not less than five years" should be construed as a term of years not less than five years and *not more than 30 years*. Recently, the Missouri legislature amended the penalty for the unclassified felony of rape under § 566.030, eliminating this discrepancy. The amendment, which became effective on August 28, 1993, provides that the unclassified felony of forcible rape is punishable by life imprisonment or a term of years not less than five years and not greater than thirty years. Thus, the legislature addressed the logical discrepancy suggested by defendant. Defendant argues that although he was sentenced before the effective date of the amendment, § 1.160, RSMo 1986 provides that if during the pendency of a case a "penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense, the penalty or punishment shall be assessed according to the amendatory law." However, the Missouri legislature has also recently amended this statute restricting its application. Section 1.160 now only allows relief from a statute reducing a penalty if the statute's effective date is "prior to the original sentencing" of the defendant. Defendant Davis in the instant case had already been sentenced as of August 30, 1993. Thus, this amendment does not apply to him.

■ Ironically, the fact that defendant was sentenced as a persistent offender necessitates the granting of relief in this case. Defendant was sentenced as a persistent offender "to an extended term of imprisonment"

under § 558.016. Paragraph 7 of § 558.016 sets forth the maximum terms of imprisonment for a persistent offender under each felony classification (i.e., class A, class B, class C and class D). Defendant was convicted for the *unclassified* felony of rape pursuant to § 566.030. Thus, at first glance, § 558.016.7 appears inapplicable to defendant's sentencing. However, § 557.021.3 specifically applies to the extended term provisions of § 558.016 and classifies every felony and misdemeanor offense not already classified by statute as class A, class B, class C or class D, based upon the authorized punishment of the underlying offense. Defendant was convicted for the unclassified felony of rape, now carrying a penalty of not less than five years and not more than thirty years, or life imprisonment. Section 557.-021.3(1)(a) states that if the charged offense is a felony, then "[i]t is a class A felony if the authorized penalty includes death, life imprisonment or imprisonment for a term of twenty years or more." Two cases decided by this court expressly provide that the unclassified felony of rape set forth in § 566.-030.2 is classified as a class A felony for sentencing enhancement purposes. *See Weeks v. State,* 785 S.W.2d 331, 332 (Mo.App. 1990); *Wescott v. State,* 731 S.W.2d 326, 331 n. 6 (Mo.App.1987). Thus, for the purpose of sentencing defendant as a persistent offender, the unclassified felony rape conviction constitutes a "class A" felony under § 557.-021.3(1)(a).

Section 558.016.7 sets forth the "total authorized maximum terms of imprisonment for a persistent offender" under each felony classification (i.e., class A, class B, class C and class D). This section provides that the total authorized maximum term of imprisonment for a class A felony is "any sentence authorized for a class A felony." Section 558.011.1(1) provides that the authorized term of imprisonment for a class A felony is "a term of years not less than ten years and not to exceed thirty years, or life imprisonment." Thus, the maximum sentence defendant could receive on each count of unclassified forcible rape is life imprisonment. Section 558.019.4(4) provides that for the purpose of calculating the minimum prison term to be served, a life sentence equals fifty years. Thus, the trial court erred in sentencing defendant to 900 years imprisonment for the rape convictions. Accordingly, the sentence of 900 years is vacated and the case is remanded to the trial court for re-sentencing of defendant as a persistent offender on the rape convictions. The additional ninety-nine years imprisonment which defendant received as a result of the kidnapping and armed criminal action convictions remains unchanged.

### *Comments in Closing Argument*

■ Next, defendant contends that the trial court plainly erred in allowing the state to argue that the jury should start its assessment of punishment on the counts of forcible rape and armed criminal action at a term of 100 years imprisonment and should add on "100 years for every lie" the jury thought defendant told at trial. Defendant claims that such argument violated his rights to due process of law and to a fair trial as guaranteed by the sixth and fourteenth amendments to the United States Constitution and by Article I, §§ 10 and 18(a) of the Missouri Constitution, because the argument called on the jury to punish defendant for alleged improper conduct which was not charged against him.

■ No objection was raised by appellant regarding these comments during closing argument. To preserve a claim of error for appellate review of improper closing argument, a party must object to the allegedly erroneous argument at the time it is made. *Sandy Ford Ranch, Inc. v. Dill,* 449 S.W.2d 1, 7 (Mo.1970); *Porter v. Bi–State Dev. Agency,* 710 S.W.2d 435, 437 (Mo.App.1986). Appellant thus requests this court to review these remarks for plain error under Rule 84.13(c).

■ Generally, trial counsel is accorded wide latitude in closing argument and the trial court has broad discretion in this area. *Kelly v. Jackson,* 798 S.W.2d 699, 704 (Mo. banc 1990). No objection was made by defendant in this case regarding the propriety of the prosecution's comment at the time it was made. Rule 84.13(c) provides that an appellate court can consider plain error

"when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." We need not decide whether proper objection could have been made to these remarks. As a general principle, we find nothing improper in the idea that a criminal who wilfully prevaricates to avoid responsibility is deserving of more punishment than one who attempts no deception. However, the suggestion to the jury of a particular term of years for "every lie" may be objectionable. In reviewing the entire record, however, even assuming the remarks may have been objectionable, this court concludes that the state's comments regarding sentencing did not reach the level of "manifest injustice" nor did they result in a "miscarriage of justice." It cannot confidently be said that the remarks complained of, as they appear in context, improperly influenced the jury to an unjust result or deprived the defendant of a fair trial. A manifest injustice will be found only when it appears that any improper argument had a decisive effect on the jury's deliberation. *State v. Davis,* 566 S.W.2d 437, 447 (Mo. banc 1978). The trial judge is in the best position to judge the impact. *State v. Murphy,* 592 S.W.2d 727, 732 (Mo. banc 1979). We hold that the trial court did not commit plain error in failing to take action with regard to the above comments made during closing arguments.

### Evidence of Other Crimes

In defendant's third point he claims that the trial court erred in overruling his objections and allowing the state to present evidence regarding the alleged rape and kidnapping of JoAnn Watkins in voir dire, opening statement, during trial and in closing arguments. Defendant claims that he was denied his rights to due process of law and to a fair trial as guaranteed by the fifth, sixth, and fourteenth amendments to the United States Constitution and by Article I, §§ 10 and 18(a) of the Missouri Constitution because the evidence was of other crimes and it did not fit into any of the exceptions to the rule against evidence of other crimes and was not strictly necessary to prove the offenses charged against defendant in this case.

Defendant failed to object to comments made by the state regarding the rape of JoAnn Watkins during voir dire, opening statement and closing argument. However, when JoAnn Watkins testified at trial, defendant did make a continuing objection to the relevancy of her testimony. Thus, the issue presented is whether the trial court erred in overruling defendant's objections to JoAnn Watkins's testimony during the state's case in chief.

A trial court has broad discretion in ruling on questions of relevance and its decision will be overturned only upon a finding of a clear abuse of that discretion. *State v. Driscoll,* 711 S.W.2d 512, 516 (Mo. banc 1986), *cert. denied,* 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). The test utilized to determine whether evidence is relevant is whether "it logically tends to prove or disprove a fact in issue or *to corroborate evidence which itself is relevant and bears on the principal issue." Id.* (emphasis added). Evidence should be excluded as irrelevant only if it is shown so beyond doubt. *State v. O'Neal,* 718 S.W.2d 498, 503 (Mo. banc 1986), *cert. denied,* 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987).

Defendant argues that evidence of the rape and kidnapping of JoAnn Watkins fails to fit into any exception to the general prohibition of presenting evidence of other crimes. Defendant suggests that the state presented the evidence under the "common scheme or plan" exception to the rule. However, because of the defense presented by defendant in this case, it is not necessary to determine whether the common scheme or plan exception applies in this case. The evidence presented by JoAnn Watkins was legally and logically relevant to the purported defense of defendant Davis that he was coerced into participation in these incidents, and that he did not really rape Melissa Jackson.

Defendant's defense centered around the proposition that he feared Ronald Fox, his cohort in this crime. He argues that he was threatened by Ronald Fox and was so fearful for his own safety that he had to comply with Fox's request to rape the young teenage girl. JoAnn Watkins testified, however, that at all times during her ordeal with defendant and

Fox, she believed that defendant was in charge. Defendant always drove the car when they were in the car and he was the only one of the two to display a weapon. Further, she stated that defendant consistently made all the important decisions of where they were going and what they were doing and never once did Ms. Watkins get the impression that defendant feared Ronald Fox. Ms. Watkins's testimony corroborated the testimony of Melissa and Regina concerning this point. The teenage girls also testified that defendant was in charge of the situation at all times and that Ronald Fox generally deferred to defendant on the decision-making. Thus, JoAnn Watkins's testimony was logically and legally relevant because it corroborated other relevant evidence adduced from Melissa and Regina on defendant's role in the crimes. This, of course, was directly relevant to defendant's entire defense. The probative value of this testimony outweighed any prejudicial effect to defendant. Although we analyze the evidence as rebuttal testimony, the trial court in his discretion did not err in permitting it in the state's case in chief. Defendant discussed his proposed defense as early as his voir dire of the jury. It was clear from the start that he planned to present the defense of duress. There could be no prejudice in receiving Ms. Watkins's testimony during the state's case in chief. Therefore, we need not consider whether it was otherwise admissible. The trial court did not err in overruling defendant's objections.

### Reasonable Doubt Instruction

██ Defendant's fourth point on appeal is that the trial court plainly erred in submitting to the jury an instruction defining reasonable doubt, patterned after MAI–CR3d 302.04, because defendant was denied his right to due process, as guaranteed by the fifth and fourteenth amendments to the United States Constitution and Article I, § 10 of the Missouri Constitution. Defendant argues that the language "firmly convinced" suggests a higher degree of doubt than is constitutionally required for acquittal.

This instruction has been repeatedly upheld against constitutional challenge. *State*
*v. Griffin,* 818 S.W.2d 278, 282 (Mo. banc 1991); *State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). The trial court did not err in submitting the reasonable doubt instruction to the jury.

### Denial of Rule 29.15 Motion

Finally, defendant claims that the motion court clearly erred in denying defendant's Rule 29.15 motion for post-conviction relief without granting an evidentiary hearing. Defendant claims that the record leaves the firm conviction that a mistake has been made, since 1) the sentence imposed on him exceeded the maximum sentence authorized by law, 2) defendant's purported waiver of his right to counsel at trial was invalid, and 3) defendant's "standby" counsel was ineffective because he failed entirely to participate on defendant's behalf at trial. The court has already addressed defendant's argument that the sentence imposed on him exceeded the maximum sentence allowed by law, and relief has been granted. Therefore, we address defendant's right to an evidentiary hearing as to his other allegations.

██ Generally, a defendant is not entitled to an evidentiary hearing for a claim of ineffective assistance of counsel if the case record conclusively demonstrates that appellant is entitled to no relief. *State v. Fitzgerald,* 781 S.W.2d 174, 189 (Mo.App.1989); Rule 29.15(g). An evidentiary hearing should be held only if: "(1) the Rule 29.15 motion alleges *facts,* not conclusions, warranting relief; (2) the facts alleged raise matters unrefuted by the files and record of the case; and (3) the matters complained of resulted in prejudice to appellant's defense." *Id.* Appellate review of the denial of a Rule 29.15 motion is confined to the issue of whether the findings of fact and conclusions of law of the motion court are clearly erroneous. *State v. Anderson,* 785 S.W.2d 596, 600 (Mo.App.1990). The motion court's determination is clearly erroneous only if, after reviewing the entire record, the appellate court has a definite and firm impression that a mistake has been made. *Id.*

██ Defendant contends that the motion court clearly erred in denying his Rule 29.15

motion for post-conviction relief without granting an evidentiary hearing, because defendant has alleged facts which, if true, would warrant relief. Defendant claims first that his waiver of representation at trial was invalid. Specifically, defendant contends that he did not knowingly and intelligently waive his right to assistance of counsel at his trial. The record reflects that defendant filed *pro se* motions to dismiss his court appointed counsel so that he could proceed on his own. The court questioned defendant concerning his understanding of his efforts to proceed *pro se*. Defendant originally had a one hour hearing on his motion to dismiss counsel and represented himself. He gave a detailed account of his understanding of the trial process and repeatedly stated that he wanted to represent himself and that he was aware of the possible consequences. Again, on the day of defendant's trial, the judge asked defendant repeatedly if he wanted to proceed *pro se* and if he understood his choices and the consequences of his decision. Defendant unequivocally stated he understood and desired to proceed *pro se*. Thus, the facts presented in the record refute defendant's assertion that his waiver of counsel was involuntary, and show this allegation to be utterly groundless.

Defendant also contends that his "standby" counsel was ineffective because he failed to participate in defendant's trial. Defendant chose to defend himself at trial. Defendant further agreed to the arrangement that his appointed counsel would act as "standby" counsel and be present in the event defendant needed him. Defendant fails to point to any evidence in the record that defendant ever sought help from standby counsel or that counsel refused to help defendant when he needed help. Defendant cannot adamantly waive his right to trial counsel and then complain that counsel failed to actively participate at trial. Defendant's contention is utterly groundless. The motion court did not err in denying defendant's Rule 29.15 motion without an evidentiary hearing. Defendant and his counsel are hereby reprimanded. It is unfortunate that this otherwise meritorious appeal should be cluttered with the points related to assistance of counsel, which appear to be sheer nonsense.

The judgment is vacated as to the sentence on the three counts of rape. The balance of the judgment is affirmed. The case is remanded to the trial court for re-sentencing on the rape convictions. The trial court shall re-sentence the defendant as a persistent offender, and may impose the maximum sentence authorized by § 566.030 as amended, 1993, and § 447.021.3(1)(a) RSMo (Supp. 1993).

All concur.